The first case today is People v. State of Illinois v. Jeffrey Pelo. For the appellant we have Brian Wilson. Brian Wilson for the athlete David Manchin. Mr. Wilson. May it please the court, counsel. Good morning, your honor. My argument today will primarily center on issue one of the appellant's brief. Certainly if the court has any questions regarding any of the other arguments, I'm more than happy to discuss those. We are dealing with a difficult subject matter today. I'm going to do my best to be discreet during the presentation of my argument. Mr. Pelo was denied a fair trial for the state was allowed to introduce and the jury was allowed to consider for any purpose an extensive amount of highly prejudicial and irrelevant pornography. Specifically, the state was allowed to introduce approximately 175 pornographic images, hundreds of internet links to sexually explicit material, two sexually explicit movies, an erotic story, sexually explicit internet searches, and many descriptions of sexually explicit web content that they alleged Mr. Pelo viewed. This material was presented to the jury on 23 three-foot by four-foot posters, through PowerPoint presentation, through video, and testimony. And I think that there are some facts that I want to start out with with the argument, and I believe they're uncontested. The state during trial failed to offer any evidence that someone that looks at pornography is more likely to commit sexual assaults than someone who is not. Every photograph, every movie, the vast majority of web descriptions, and nearly every... Is there a case law that says that is necessary? That is what is necessary. For this to be admissible? It's a question of relevance. If the state is going to admit all of this pornography, there better be a pretty good basis for doing that. And if they're admitting this pornography solely to show that Mr. Pelo was... Apparently the purpose was to show that he was the person that committed these sexual assaults, they should have introduced some expert testimony that links the two. Otherwise, what's the limit? They'd be allowed to introduce virtually any bad fact about Mr. Pelo and say, well, jury, take our word for it, this establishes that he's the person that committed these sexual assaults. So this isn't the situation, though, is it, counsel, where you have someone accused of breaking in and raping women and he has pornography on his computer and that's the extent of the state's theory in the court's ruling, is it? I guess I don't understand the question. Are you saying that based on the nature of the pornography? Yes. Based upon the nature of the pornography and the nature of the crimes committed by the perpetrator of these cases, wasn't there a link between these two which the court found and is present? No, I don't believe so. I don't believe there was a link. And in fact, you raise a good point that let me... I think it somewhat addresses your question. The state, or the court, when it was looking at what evidence to admit, viewed videos that the state wished to introduce. One of the videos was of a woman taking a shower. And the court said, I'm not going to allow that video to be introduced because this is a woman taking a shower. Some of the victims were made to take baths and they were forced to take baths. This woman was just taking a shower, so I'm not going to admit that. It's not relevant. But the court then allows the state to get in photographs of incest, allows the state to get in photographs of what appear to be genital and anal electrocution. I know that there was some evidence regarding forced sex. And I think specifically that's what your Honor is asking about. No, let me be more clear. It seemed to me that a significant portion of the pornography at issue dealt with instances in which women were shown and were penetrating themselves digitally or with foreign objects a lot. And the perpetrator in these cases engaged in that sort of activity and indeed explained to one or more of the women victims that this got him off. This is what he liked to see. This is what he wanted them to do, etc. Sure. So what I'm saying is this. It seems to me pornography, which would be a general description of a visual showing of sexual conduct, hardcore sexual intercourse, oral sex and the like, doesn't by definition or doesn't, could include some of this, but doesn't by definition, to say someone was looking at pornography, that's not it. This is a particular breed or type or form that was emphasized in the pornography and in fact we know from the victims was emphasized by the perpetrator. Why isn't that a relevant link? There are several things I want to address about that. Okay. The first being the evidence regarding the penetration with objects and digitally. That's one small part of the pornography that was introduced at trial. There was pornography that the state showed everything from women masturbating to lesbian sex to forced sex fantasy. And the images that I believe you're speaking about were a pretty small percentage of... Well, no, the problem with that is twofold. One, are you telling us that there's got to be a percentage involved for Romans to be shown? And the second problem is that's not my belief of what in fact is the case. It wasn't a small percentage. It was a significant percentage. I'm not going to give you a number as to what it was, but a lot was this peculiar subset of pornography for lack of a better way to put it. So I'm not sure if your first response is, well, you have to have 38% of it, the total number to be this for linkage. I don't understand that to be the case. Why should we accept that? Well, I'm not saying that you have to have a certain percentage to be a link. I'm saying that when you're looking at the broad picture of what was introduced in this case, whether it is the digital penetration, whether it is the hanging from ceilings, whether it is... Counsel, let me be more direct. The state's argument is, Judge, there's a linkage here. The question is the identity of the perpetrator. The question is, is the defendant, Mr. Pelo, the guy who committed these crimes, the guy who committed these peculiar crimes? So this wasn't just women. We've been around a long time in this business. This is my 40th year in criminal justice, and I've seen a lot of rape cases. I've never seen one quite like this, Counsel, without going into more detail. This is a peculiar subset of the species. Why couldn't the court, listening to the argument of the state, say, well, you know, this emphasis of the same subset of pornography in the defendant's computer is a link, so that the trial, try or fail, the jury may consider this among all the other circumstances as identifying the defendant as the perpetrator. Why isn't that a determination that this is a fact which, under the definition of relevancy, makes it more likely than not that Mr. Pelo is the man who committed these crimes? I think absent evidence that somebody that looks at this material goes out and commits sexual assault, I think it's a stretch to say that because this one man, and arguably, and I'm not a pornography connoisseur, but arguably, there are a lot of men that like looking at women masturbating and women putting things inside themselves. We know that, in a way, because some of the websites touted themselves as choice of the year, or best website of whatever year it was that it was on. There are a lot of subscribers to this material. And unless you're going to say that that entire subset of the population are potential perpetrators of these rapes, or the police are going to go out and they're going to get a list of all the people in Bloomington that look at these websites. The question is, on a relevancy determination, does the peculiar emphasis on this form of sexual activity by the perpetrator, out of his own mouth, explaining to the women why he wanted them, this gets me off, et cetera. Is that linked with this peculiar emphasis on the same thing in the defendant's computer? Does that make it more probably true than not true that this guy is the same guy? It's not have to prove it beyond a reasonable doubt. Is it something which the jury should be permitted to consider? Sure. I understand what you're saying. I respectfully disagree with that position in that the state got in a lot. And this was certainly a part of what they got in. But they got it in without saying, linking up somehow that this shows that he is the man that did this. If you're speaking about identity, you mentioned identity. Yes. The state cited People v. Bogo, which is a case where a woman gets accosted in her car. A man takes off her shoes and performs a sax act with her foot. Later, police arrest a man, look through his cell phone, and find 30 pictures of feet on his cell phone. That is all that he had on his cell phone. That's all he looked at. That shows that he has an unhealthy interest in women's feet and stolen women's feet. What if it weren't all? What if it were only 25% of what he had on his computer? Then I think it makes it harder for the state to draw a link between the two. Let me give you a practical example. Let's say you leave the argument here today and you say, that Wilson guy creeped me out. I'm worried about him. So you go to the Springfield Police and you say, I would like you to go and visit Mr. Wilson at his house. There's something about him I don't like. And the police come to my residence, they walk in, and they find that I have multiple copies of every treatise that you've written in, published every law review article, and I have absolutely nothing else in my house, book-wise. Nothing else on paper. Yeah, that probably shows that I have an unhealthy interest in you. Same facts. Police come to my house, they walk in, and I have one of the most extensive law libraries known in a private collection. Not so much in that circumstance. It shows that certainly your work could be a part of those. But I have a much broader interest. The state introduced pornography from essentially six months after the last sexual assault to a year and a half after the last sexual assault. And like I said, these included things like, and I have photographs if the court would like to see them, women being beaten to the point, and this is image 57 from Mr. Manchin, women being beaten to the point that they're near-bloody. An image like this was shown to the jury three separate times. Images of incest. The court was told that Mr. Pilo viewed this image, number 38, of a mother having sex with her son. They were told that he viewed a website regarding his son's endeavor to get his father drunk so the father would sodomize him. They were told that Mr. Pilo viewed images of women being hung from rafters, of genital and rectal electrocution. I have photos of that as well. They showed those to the jury. This has absolutely nothing to do with the crimes for which Mr. Pilo was on trial. And this is all part of that extensive collection of pornography that he has, much like if I have all the law books in my home. You can't say that all of this was relevant. And certainly that the jury wouldn't have looked at this material and thought, my gosh, he's a bad guy. I mean, looking at some of this myself, it's hard to look at a photo like this woman being beaten and think, hey, you know, he's a fairly good guy. It's hard to think that. And when you have evidence like this, much like a case I cite, People v. Barriner, in the brief, the state doesn't talk about it. It's a case where a man arrives home and finds the body of his wife in their home. She's dead. Police question him. They're satisfied with his responses. They must be. They release him. Seven months later, the police speak to him again because it has been alleged that he has committed a nonconsensual sexual act with another man. And while the police are speaking with him, he admits to killing his wife. The case goes to trial, and the state presents the confession, and he himself has said he was at the crime scene. He found the body of his wife. And they allow in this evidence of a homosexual act, showing motive. And they say, well, look, he has this homosexual interest, and thus he must have wanted to live that lifestyle and get his wife out of the way. Or at least that's what I presume they were intending. He gets convicted. The appropriate reverses. And they say he had a right to be convicted based on the evidence that showed that he had killed his wife. And there was a high likelihood that the jury was prejudiced by this inference of the homosexuality, and thus convicted him based on that evidence alone, of being a bad or being an immoral person. The other thing the court said was, this was from seven months after his wife's death. And thus the link between the two is far too tenuous to say that it's relevant. I think the exact same logic applies to this case. Only this case is worse. In Remnants, you have a jury being told about a homosexual act. In this case, you're having a jury showing photos of a gynecological exam. You're having jurors showing these images of electrocution. Showing images of horrific things done to women. And much of this material was viewed six months to a year and a half after the last sexual assault. The jury was told that between January of 2006 and June of 2006, Mr. Pila was viewing websites regarding genital electrocution. A year to a year and a half after the last sexual assault. How is that relevant? It's not. There's absolutely no relevance that can be attached to that evidence. But it was admitted. This is evidence that, especially in light of the court's own decision to keep out the video of the shower, because he thought that was too prejudicial and some of the women were made to bathe, the vast majority of this evidence has absolutely no relevance to this crime. You can't even tangentially link it to the crime. It should not have been admitted. And more importantly, both the state and the state's own, or both the court and the state's own computer forensic expert, testified that there was absolutely no evidence to compute all of this pornography. And I believe I'm characterizing this correctly. They essentially said that if I were to go to sportsillustrated.com to look and see how the Cardinals did today, and I pull it up and it's right at the top, Cardinals win, and I close the website, if my wife audits that website, or audits that computer, it's going to show that if I do that every day, I'm going to have 365 pictures of women in bikinis on my computer. Because no matter that I didn't scroll down and look at the photographs of the Sports Illustrated swimsuit issue that's down at the bottom of the Sports Illustrated webpage, my computer still downloads it. Because I pull that page up, it still shows that that image was downloaded, even though I didn't see it. This evidence was admitted, regardless of where Mr. Kelo saw it, without any limitation. There was no limitation put on this evidence to require the jury to... grounds of relevance, for instance, or grounds of his motive. It was all let in. They could have looked at it and thought, he's a bad guy, I'm convicting him. He has the propensity to do this based on the pornography, I'm convicting him. And based on the prejudicial nature of this evidence, I don't think you can say that that's not what the jury did. And I think it's important to note as well, something that Mr. Manchin points out, he says, well, there was a lot of evidence in this case. And it could be that the jury looked at that evidence and convicted him nonetheless. The jury was out for 16 hours. And that wasn't just from the moment they left the court to the time they returned the verdict. They deliberated for 16 hours. This isn't a slam-dunk case. What does that mean, that they deliberated for 16 hours? I mean, had they deliberated for one, would that be a sign that we should view the evidence as compelling? I've certainly heard the state make that argument. Have you ever heard us accept it? I'm not aware that I have. But I'm just saying it shows... How long was the trial? I believe it was around five weeks. I'm just saying that it shows that this wasn't a, oh, yes, we're overwhelmed by the evidence that he did it, we're convicting him. They were thinking about something during that time. Well, they had an awful lot of counts and five different cases to review, didn't they? They did, but... I'm sorry, I didn't want to interrupt you there. But according to the state, they were all so interrelated that, according to the state, one guy had to have done all of them. So, theoretically, if the jury believes he did one of them, they're going to convict him of all of them. So, according to the state's own argument, if they're that related, if the evidence was so overwhelming, they should have been back with a verdict very quickly. The state has argued that it's motive evidence, it's identity evidence, and it's simply just not, based on the remnants case that I mentioned and the distinctions between people versus Bobo and the facts that occurred here. So your argument is none of it should have come in, or just those portions regarding incest and electrocution? I don't think any of it should have come in, unless the state had an expert witness, for instance, that said, I've looked at this pornography, I've interviewed Jeff Pelot, and it's my conclusion that he viewed this pornography because he had some compulsion that he had to go out and rape women. And based on him looking at this pornography, it shows me, the expert, that this is the guy that did it. And unless they can show that there's a link here, like I said, there are arguably millions and millions of men that look at pornography every single day. That was the defendant's position at trial too, wasn't it? In part, yes. Well, I think it was just, none of this is admissible, none of it should come in? That's correct. And I think defense counsel was right for arguing that. Because it is too early. You have prejudicial evidence that, at least in my opinion, is far more prejudicial than it is probative of anything. The vast majority of which was viewed six months to a year and a half after the sexual assaults. You have absolutely no evidence that someone that views this pornography goes out and commits sexual assaults. And the jury, and I should note, the jury were 12 men and women from everyday life, hardworking people. They are coming in, they're sitting here, they're listening to this evidence. My time is up. Is it okay if I just continue with this one last thought? Go ahead. They're coming in, they're looking at this evidence, and all of a sudden they are themselves assaulted with these 23 posters of graphic pornography. This wasn't something that they would see in their normal life, and it was clearly prejudicial. Jeff, you should receive a new trial. Thank you, counsel. You'll have time to rebuttal, Mr. Manchin. Good morning, your honors. May it please the court, counsel. I'd like defense counsel to limit my remarks to the other misconduct evidence, unless there's any questions about the other issues raised in the brief. In this case, the defendant made no objection below or in his brief regarding the need for an expert to link interest in pornography to commission of crimes. The first time this is being mentioned is today in oral argument. So to say that the trial judge was wrong for not requiring an expert opinion before he could admit this, I think, has been clearly waived because it was never raised at any time before. Is Mr. Wilson correct that the approach at trial is essentially all or nothing? All or nothing. Yes, that's correct. That was the only objection made was that none of it was. But that didn't limit either the state or the trial court, did it? No, it did not. With regard to some of the things he's pointed out, what is the reason that all of that had to go in as well as the other stuff? Well, I think part of the problem was technological trying to redact. That would be the problem. It could have been done. But the other thing is that presenting this material, as you're saying, the crime sphere had a few new features, and a great deal of the pornographic materials that the defendant was interested in featured those peculiar features. And I think that does establish a link, and I think the trial judge could be found to be relevant. How about father-son incest, mother-son incest, electrical shocks, consumption of urine? Well, that could be cut in two ways. Either as the defendant is saying it's too prejudicial that it's going to... Or it can go to the defense benefit in saying, hey, the defense interest is so much broader than these peculiar features of these crimes that it doesn't... An interesting theory, except he's the one who's arguing against it. So let's assume he didn't want it. I know. So now what's your explanation? I don't have a real explanation as to why the defense benefited everything rather than just limiting it to the... Why did the state's attorney argue for everything? I mean, that's... I don't understand what... Assuming that there's some stuff here that clearly could be linked, the categories that Justice Stoner just mentioned, were we going back in the wayback machine to that moment in front of the trial judge and said, well, tell me again, Mr. Manchin,  The only answer I have for that is, What the prosecutor said below is that it didn't establish the linkage. The fascination with pornography and the peculiar features here showed that the peculiar features matched the peculiar features of the crime. That only applies to this limited subset of pornography, right? Yes. And we're way past that limited subset here, aren't we? Yes, Your Honor, you're correct. And there was never any objection or statement as to why the evidence beyond the peculiar features of this crime was brought out. What's interesting is the trial court apparently felt itself not necessarily bound by the or nothing approach to the defense because the court did, in fact, keep out some stuff. There was a specific objection to certain portions of it, including the forced witness theory, whatever that was. Yeah, the forced witness and the showers. And the trial judge, based on that specific objection, said, no, that's not coming in. So it wasn't quite or nothing? It wasn't quite or nothing. There was objection to some of it on specific basics, the forced witness and the shower scene. And the judge says, no, even though there was a lot of conversation between the assailant and the victim, is what would your family think if they know this was happening? That's not enough to bring in this forced witness films and information. There wasn't any specific discussion about the topics? There were no specific references below to the references to incest or anything like that. The only specific objection was an all or nothing and then a specific one as to these forced witness ones.  That's correct, Your Honor. And then there was a case where they were indicted jointly? Well, at least the first four or something? Yes, I believe so, Your Honor. Was there any concern ever raised about that? No, there was never any concern raised or suggestion that there would be a separate trial for each crime or for the stalking and attempt, verbally charged separate from the rape cases. As far as the timing, I think this case does come in pretty close to Bobo as far as the fascination with these features and the commission of crimes with these features does establish a link that the jury could consider in reaching the offense.  Other materials that went beyond that would go more to the weight that the jury would give to this as to how much of a link is there if he's got this varied interest and not just simply this... Well, counsel, are you conceding that the father-son incest, mother-son incest, electrical shocks, group sex, urination, consumption of urine, none of that should have come in? I think that if a proper objection had been made, it should have been to those specific materials that it should have been excluded, but since no specific objection was made to that particular part... The trial court thought there was an objection, didn't it? Well, like I said, the only objection made was that none of it should come in because there was a specific objection to this limited subset of the forced witness and the shower information. There was no specific objection to the topics that you just mentioned. Well, but it was the state that moved the limine, and appropriately I might add, for the trial court to make a pre-trial ruling on the admissibility of all this stuff, wasn't it? Yes. So the state's offering it, and the defendant's role is to say, well, we object. Do you mean they required to do something more? Well, I think under the circumstances here, there's two different arguments. One, that no pornography should come in at all because interest in pornography has no linkage at all to commission of crime. And two, that this particular type of materials is not sufficiently linked to this particular crime. And in this case, the objection and the focus at trial was on that first question. That, you know, is there a link between, or is the defendant's interest in pornography relevant to establish his commission of these crimes because of the peculiar features of the materials that he viewed? That was where the argument was. There should have been a separate objection in hearing, I think, on, okay, now that we're letting the pornography in, let's sit down and between everybody, let's agree, okay, this we're going to let in, this is going to be kept out. That was never done? That was never done. It seems so peculiar. I've been in this position several times as a trial judge, not with pornography, but with photos from the crime scene and dead bodies and autopsies and, you know, you say one, three and six are coming in, four and seven aren't. Yes. How does that, what happened? I have no idea, and that was something that I was surprised at too when I read this case, that why wasn't there more done to parse through it. I'd like to have a better way to put it. But I still think that given the amount of materials that was included in there that was relevant and was probative, that the inclusion of the other stuff I don't think is sufficient to require a reversal in this case, given the strength of the evidence against this and the strength of the links regarding the admissible. The trial court, to its credit, engaged in extensive dialogues with counsel throughout this trial on various issues that came up. And again, to its credit, explains its ruling. When it determined that, gee, I'm going to overrule the objection to the pornographic evidence, I think there's a connection. And then there was even further discussion about it, I think, in the balancing context. Does prejudice substantially outweigh the probative value? At any point in these dialogues did the defendant say, You know, Judge, I can understand some of this stuff coming in, but, kind of like you and I have just spoken, Mr. Manchin, let's go through this and parse this out because we have dozens of things here and even if the court thinks that some of it, much of it, should come in. Part of it comes in, but the hint says dozens. The things that Justice Stearns just spoke about. So just saying, you know, even if you think that it's going to come in, forget about that stuff. With the exception of the force witness and the shower scene, that was the only specific request for limitation as to specific content or limiting or parsing through to say, Okay, this seems relevant. There's never any request or attempt to do that below. Frankly, you're right that this would have been a cleaner and neater trial. Personally, I don't know why the prosecutor risks overturning this case by putting in more than what was absolutely necessary to establish the linkage, the incest and the like that really has extreme, little or no relevance at all. But there is a great deal of information in there that was relevant and the difficulty would be trying to cut and paste to present what is and what is not. Again, there was never any request below to do this kind of parsing. In fact, the first time the suggestion was for cutting and pasting has been in the defendant's reply brief because even his original brief was an all or nothing approach, that nothing comes in. Counsel, before you run out of time, I'd like to hear some argument regarding the proportionate penalties. Oh, the proportionate penalties? I think that this court's decision in Henderson, that was a knife case. How about as to the firearm? I think the same reasoning would apply as far as the knife and the firearm because the statutory language is the same whether it's a knife or a gun as respect to armed violence. I thought that the threatening to use language only applied to the knife and that language was not in the statute concerning the firearm. Am I wrong about that? I'm sorry, just a second. My mind is just drawing a blank on that. I can't recall the exact language in the statute, but from my recollection I think it's I'm drawing a blank so I can't answer that. But I think the reasoning is similar as far as the knife or the gun. I don't think for the from my recollection I think that even with the gun you can claim to have a gun for the sexual assault whereas with the armed violence you actually have to have the gun. But I may be incorrect on that. If there are no further questions from the court thank you. Thank you counsel. Rebuttal please. Thank you Your Honor. I want to disagree with Mr. Manchin on one important topic that married a lot of discussion during his argument. As far as the objection to the videos my recollection is the defense counsel wasn't saying keep out the video of the shower. Keep out the forced witness videos. He objected to all of them. Much like he did with the pornography. And the court forced it out. The court looked at it and said I've got this objection to all this material like you were saying Justice Swigman, this much gets in, this much doesn't get in. What happened with the general website material and the internet material? Early on in pretrial hearings the judge made a finding that all website material gets included. And so it all came in. The defense counsel objected in pretrial hearings. He objected at trial and when the jury was sent back to deliberate he objected then. He said I don't want this material to go back with the jury. It was improperly admitted. The judge says well no, I've admitted it. It can go back to the jury if there's room. The judge didn't think there was room for it all during deliberations. Ultimately it went back with the jury and as the state said I believe in their closing argument the jury had an opportunity to look up close at this material themselves. So the state is essentially especially like you were saying again Justice Swigman with this motion in Lemonade. They're kind of the gatekeeper in a certain way. It's their job to ensure not only that they're carrying out the law and that they're prosecuting the cases, but to see that Jeff Pelo gets a fair trial. Just like it was the court's duty to see that. Just like it was defense counsel's duty to see that. And Justice Turner getting to your points about the information that was admitted at trial a lot of it has nothing to do with this case. I went back and just briefly looked at my notes. There was at least one reference to sex with animals. There was something about a balloon fetish. There was information about spanking. None of it has any relevance to this case. And you have a jury looking at this and I disagree with Mr. Manchin and Justice Swigman rightfully pointed out that he said well it cuts both ways and maybe the jury looks at this and says there's a broad repertory of pornography. I'm absolutely not making that argument so Mr. Manchin is wrong with that but I can't reasonably believe that a jury is going to look at evidence of homosexual incest and think well this just shows that he had a broad interest in pornography. They're going to look at it and they're going to say oh my gosh who looks at this material? What kind of a guy does this? This material is that shocking. And one thing I should note there are approximately 80 photographs appended to the appellant's brief. All in all like I said there's about 175. I had to request them in two batches from McLean County. The second batch didn't get scanned because I couldn't find a printer in Springfield to do it for me based on the content of the exhibits. So certainly I would ask that the court go back and review all the exhibits because as you go along they just get more prejudicial and more prejudicial. It's really awing the subject matters that got in and the extent to which they got in. The state, I think I referenced it earlier, introduced that between January and June 2006 he was looking at videos about genital electrocution. They showed that he had done that multiple times. It has no relevance to this case. Before my time expires Justice Turner I want to address your point about the proportionate penalties argument. The statutes are different. The possession of a firearm part just requires for aggravated criminal sexual assault just requires that he was armed with a firearm. Whereas the statute regarding a knife is was displayed, threatened to use a dangerous weapon. So in this case where the evidence seemed to be that whoever perpetrated these rapes was armed with a firearm, it matches up with the armed violence statute almost exactly. So that's why the proportionate penalties argument was made. And just a final thought getting back to something that Mr. Manchin said. The state when they were looking at this evidence to get into this pornography they had to know that a lot of this had nothing to do with the case. And Mr. Manchin himself said it or one of you mentioned it and Mr. Manchin kind of agreed with you. They were risking reversal here. And they should have known that. They should have known that getting all this information and without a link and some of the graphic and horrendous content that they got in could do nothing but prejudice to the jury. And just one minor point. Defense counsel should have requested the reconstruction but he didn't. This information should have been limited and because he didn't do that he was ineffective for not doing so. So I would ask this court to reverse Jeffrey Peele's convictions and remand his case for a new trial. Thank you. Thank you counsel. The case is submitted. The court will stand and recess.